## In re CONTINENTAL ILLINOIS SECURITIES LITIGATION.

### No. 82 C 4712.

United States District Court,
N.D. Illinois, E.D.

June 21, 1983.

Lowell E. Sachnoff, Dean A. Dickie, William Gleeson, Barry S. Rosen, Brian D. Roche, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., Richard D. Greenfield, Nicholas E. Chimicles, Robert P. Frutkin, Marcy C. Panzer, Greenfield & Chimicles, P.C., Bala-Cynwyd, Pa., Lawrence H. Eiger, Michael J. Freed, Michael Hyman, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Myron M. Cherry, Robert Cushman, Jr., Bruce Rose, Cherry & Flynn, Chicago, Ill., James D. Fornari, William Jarblum, Jarblum & Solomon, P.C., Paul M. Bernstein, Edward A. Grossmann, Jeffrey Klafter, Kreindler & Kreindler, Barry J. Pinkowitz, Barry J. Pinkowitz, P.C., New York City, Lawrence Walner, Lawrence Walner, Ltd., Chicago, Ill., Daniel W. Krasner, Fred Taylor Isquith, William Loeb, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, for plaintiffs.

Scott J. Davis, Mayer Brown & Platt, Chicago, Ill., for Continental Ill. Corp., Continental Bank, Anderson, Perkins and Miller.

William R. Jentes, Kirkland & Ellis, Chicago, Ill., for Malott and Luerssen.

Rene A. Torrado, Jr., Reuben & Proctor, Chicago, Ill., for Baker.

J. Alan Galbraith, Williams & Connelly, Washington, D.C., for Bergman.

Gary L. Prior, McDermott, Will & Emery, Chicago, Ill., for Hlavka.

Mitchell S. Rieger, Schiff, Hardin & Waite, Chicago, Ill., for Rastetter.

Richard Levy, Stephen Novack, Eric N. Macey, Mark A. Rabinowitz, Marilyn J. Klawiter, Levy & Erens, Chicago, Ill., for Harper.

Hedlund, Hunter & Lynch, Chicago, Ill., for Redding.

Francis J. McConnell, McConnell, Ruberry & Jansen, Chicago, Ill., for Lytle.

John J. Enright, Arvey, Hodes, Costello & Berman, Chicago, Ill., for Goy.

Thomas D. Allen, Sheldon P. Migdal, Donald Flayton, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Ernst & Whinney.

## ORDER

GRADY, District Judge.

This consolidated case is brought by various shareholders of Continental Illinois Corporation on behalf of themselves and other shareholders and derivatively on behalf of the corporation. The defendants are Continental Illinois Corporation, nineteen of its officers and directors, Continental Illinois Bank and Trust Company of Chicago, and Ernst & Whinney, an auditing firm. The complaint concerns a large number of allegedly improvident loans made by Continental Illinois National Bank & Trust Company of Chicago, a subsidiary of Continental Illinois Corporation. The loans are in default. The class action, brought under the federal securities laws, alleges that the plaintiffs, as purchasers of shares in Continental Illinois Corporation, were damaged by the defendants' concealment of the losses caused by the bad loans. The derivative action alleges that the defendants violated their duties to the corporation in approving the loans and in failing to adopt and enforce prudent loan practices.

The motion for class certification is pending. The propriety of the derivative action is also the subject of a pending motion.

What concerns me at this point is the question of the organization and management of plaintiffs' counsel. The reason for that concern is that if plaintiffs prevail, I will be asked to determine their reasonable attorneys' fees. At the present time, there are more lawyers on the plaintiffs' side of the case than I or anyone else could possibly keep track of. This came about because four separate complaints were filed by different law firms, each alleging essentially the same cause of action, and the judge to whom this case was initially assigned entered an order consolidating the cases and appointing three of the law firms as "lead counsel" in the consolidated case. Two of the lead firms were also designated "liaison counsel". The order authorized lead counsel to perform specified kinds of work "either personally or through counsel whom they designate," and in addition, to "perform such other duties as they deem necessary."

The order designated a committee consisting of all plaintiffs' counsel, including counsel in subsequently filed cases, as a labor force to be called upon by lead counsel to perform whatever duties lead counsel might assign.

Twelve attorneys from the three lead firms have filed individual appearances in the case, and I assume it is contemplated that other attorneys from those firms will also participate. There are six additional law firms representing various plaintiffs, and thirteen individual members of those firms have filed appearances.

The order establishing this table of organization was submitted by plaintiffs' counsel. It was entered just a little over two months after the first of the consolidated cases was filed and before anything else of substance had been done in the case. The order appears to be premised on the notion that this is a "complex" case requiring the combined efforts of a large number of lawyers. From what I have learned of the case since its reassignment to me, I do not believe it is "complex" enough to require this treatment. While the factual material is probably extensive, it is not unusually difficult. The primary question is whether the defendant officers and directors should have known there was inadequate security for the numerous loans that

have defaulted. Generally, the legal issues do not appear to be particularly complex.

The number of lawyers who have been authorized to render services on behalf of the plaintiffs in this case, and the broad authority given lead counsel, make it almost inevitable that I will encounter the kinds of problems confronted by Judge Joseph L. McGlynn, Jr. of the Eastern District of Pennsylvania in the case of *In Re: Fine Paper Antitrust Litigation,* 98 F.R.D. 48 (E.D.Pa.1983). The plaintiffs' attorneys in that class action petitioned for approximately $21 million in fees and expenses out of a total of $50,650,000.00 in settlement proceeds. Finding that there was extensive duplication of effort, performance of unnecessary services and incurring of unnecessary expenses, as well as virtually uniform exaggeration of the value of the services which were rendered, Judge McGlynn allowed fees and expenses of $5,464,123.00—about 25 per cent of the amount claimed. The organization of plaintiffs' counsel in that case was strikingly similar to the organization set up by the prior order in this case. It is apparent from Judge McGlynn's opinion that the distribution of work among various counsel in the hierarchical structure presided over by "lead counsel" was, in large part, responsible for the chaos which existed among plaintiffs' counsel in that case. Judge McGlynn's 468 page opinion is well worth the time it takes to read, but at least his analysis of the organizational structure (at 70–76), is essential reading for anyone who wants to know why there is a cost explosion in federal litigation.

By a separate order entered this date, I have vacated that portion of the earlier pretrial order which established the organization of plaintiffs' counsel. I will attempt in the instant order to advise plaintiffs' counsel of the rules which will govern the allowance of fees in this case, should plaintiffs become entitled to fees. These rules will, I believe, suggest to counsel what the revised table of organization should be.

Any fees and expenses for which court approval is sought in this case will be evaluated in accordance with the following guidelines:

1. *Individual responsibility.* Generally, attorneys should work independently, without the incessant "conferring" that so often forms a major part of the fee petition in all but the tiniest cases. Counsel who are not able to work independently should not seek to represent the class. Examples of the kind of work for which only *one* attorney will be compensated are:

(a) *Court appearances.* When it is necessary for the plaintiffs to be represented in court on a motion or argument, or for a conference, no more than one lawyer should appear for them.

(b) *Depositions.* No more than one lawyer should appear for the plaintiffs at a deposition of a witness.

2. *Rates of compensation.* Senior partner rates will be paid only for work that warrants the attention of a senior partner. If a senior partner spends his time reviewing documents or doing research a beginning associate could do, he will be paid at the rate of a beginning associate.

3. *Legal research.* Counsel who are sufficiently experienced to represent the class are presumed to have an adequate background in the law applicable to the case. While it is recognized that particular questions requiring research will arise from time to time, no fees will be allowed for general research on law which is well known to practitioners in the areas of law involved.

4. *Document "review."* Generally speaking, I will allow no fees to a lawyer for simply reading the work product of another lawyer. There will be instances, of course, where a junior associate might prepare a pleading or a brief for a senior lawyer to approve before filing. There will also be times when a lawyer will need to read something prepared by someone else in order to perform a particular task in the case. But under no circumstances will it be compensable for a multiplicity of lawyers to review the same document simply as a matter of interest, whether it be a pleading, a brief or a document produced in discovery.

Again, the keynote is individual responsibility. ("... [E]very attorney cannot possibly be compensated for reading every piece of paper over the course of three years of litigation, as Levin apparently did." *In Re: Fine Paper Antitrust Litigation, supra,* at 86.

5. *Communication with attorneys for class members.* One of the principal advantages of a class action is that duplication of legal expense is avoided, or at least greatly reduced. It makes no sense to designate a small number of attorneys to represent the class and then compensate them for time spent communicating with the attorneys for individual class members. If the attorneys for the class are competent, there is no need for a legion of other lawyers to be looking over their shoulders; if they are not competent, the legion will do no good anyway.[1] There is no doubt that the activities of "liason" counsel in communicating, lawyer to lawyer, with the lawyers for class members frequently generate enormous amounts of "billable time" in class actions. That will not occur here. Class members should be kept apprised of the progress of the litigation, but in no greater detail or frequency than the typical client is kept advised by his attorney. Periodic informational mailings to the class should suffice. Even that may not be necessary. In many class actions, counsel do no more than respond to specific inquiries by class members. The needs of this particular case will become apparent in time, and we will meet those needs as they arise.

6. *Expenses.* Reimbursement will be allowed for the reasonable expense of *necessary* travel, hotel accommodations and meals. Work should be assigned so as to minimize the need for travel, e.g., if a deposition is to be taken in Chicago, it should not be taken by a lawyer from New York. Since this case is pending in the Northern District of Illinois, I cannot readily imagine a circumstance that would justify a lawyer

from out of the district making a court appearance here. Conferences between counsel who office at distant points should be by telephone; it would require extraordinary justification for counsel to fly, say from Chicago to Philadelphia, for a conference. Air fares will be reimbursed at tourist rates, and there will be no meal reimbursement unless counsel is travelling away from home.

7. *Keeping of time records.* All of the foregoing rules would be unenforceable unless there is some means of record keeping that will demonstrate compliance. Typically, fee petitions are organized by attorney, showing the chronological breakdown of what each attorney did from day to day on the case. This format makes it very difficult, if not impossible, to determine whether there has been duplication of effort, especially when the time records of numerous attorneys are involved.

The time records in this case should be kept, or at least ultimately submitted to me, chronologically by *activity* rather than by attorney. For instance, if a memorandum of law is prepared over a period of several days, there should be a time entry such as "preparation of memorandum re____," describing that memorandum and, for each date work was done, naming each person who worked on it and the number of hours spent by each person. As a further example, if a conference is held, the time entry should be headed "conference re____" and indicate all of the persons who participated and the time spent by each.

The description of the work done should be sufficient to demonstrate that it benefitted the class or contributed to the recovery of the common fund. Notations such as "research re class action" will not suffice. The particular question researched should be described. Much of the narrative in most fee petitions consists of entries like "conference with GBS re motion to com-

---

1. The *Fine Paper* case illustrates the point:
   In excess of 4,200 hours were charged to the development of a damage theory to be incorporated into the plaintiffs' pretrial memorandum and for use at trial. Despite this enor-

   mous cost to the class, as of the date of trial, plaintiffs' counsel had not developed a viable damage theory.
   At 75.

pel." As indicated above, such "conferences" should be held only when necessary, which should not be very often. But in no event would that kind of entry be sufficient to show the conference was necessary and productive. There should be a statement, albeit very brief, of specifically what was discussed and what conclusion was reached. Should such a statement necessarily include privileged information (which seems unlikely, since it will be submitted at the end of the case), it may be submitted *in camera.*

The utility of keeping time by activity or project, rather than by attorney, is suggested by the *Fine Paper* case. As one example, it was determined in that case, as a result of a painstaking analysis of hundreds of time entries submitted by numerous lawyers, that 4,500 hours were being claimed for preparation of the plaintiffs' pretrial memorandum.[2] The reason this kind of specific information surfaced in the *Fine Paper* case is that an unusual, if not unprecedented event occurred: One of plaintiffs' lead counsel and fifteen corporations who were members of the class filed objections to the fee petitions. At 78. An outside law firm hired by the class members to contest the fees reviewed all of the petitions and submitted a 525 page report, with 1200 pages of exhibits and appendices, analyzing the petitions in detail. *Id.* at p. 79. Seventy-three and one-half hours of evidentiary hearings were held in open court on the fee petitions. *Id.* at 80.

There is no reason for me to expect that any fee petition in this case will be subjected to the kind of adversary process that occurred in *Fine Paper.* The likelihood is that, as usual, I will be on my own.

Once Judge McGlynn learned that 4,500 hours were being claimed for work on the pretrial memorandum, it was a simple mat-

ter for him to conclude that the claim was absurd. On the other hand, had the time spent on the pretrial memorandum turned out to be a reasonable number of hours, it would have been equally easy to conclude that the claim should be allowed. The point is that, unless the judge knows the total time spent on a project, there is no way of deciding whether that element of the claim is reasonable or not. Keeping time by activity or project seems a good way for a lawyer to document the worth of his services, and it strikes me as the *only* way for a group of lawyers to show the worth of their *combined* services. The alternative—and, regrettably, the tradition—is to leave it to the judge to attempt an evaluation of a morass of unrelated time entries which can and often do obscure the existence of duplication and excessive charges.

The intent of these guidelines is not to force plaintiffs to litigate with counsel who have no expectation of reasonable compensation. The intent, rather, is to avoid duplication and unnecessary expense. Should I have occasion to award fees, they will be reasonable, with due allowance for the quality of the work performed and the results accomplished.

In the event a class is certified, I would prefer to designate counsel who are nominated by plaintiffs' attorneys. I therefore suggest that plaintiffs' counsel confer together with a view toward submitting a proposed roster that will be no larger than necessary to provide effective representation under the foregoing guidelines.

---

**2.** In Judge McGlynn's words:

Work on the pretrial memorandum was one of the major boondoggles of this case. Fifty-one plaintiffs' lawyers, including twenty-one partners from nineteen different law firms, and deputy attorneys general devoted a total of over 4,500 hours to the preparation of this Memorandum—especially extravagant figures considering it was to be filed after the Majority States had already filed a similar document dealing with most of the same issues. Not only were these hours excessive, but many of the partner hours were poorly allocated because the same work could have been accomplished by associates and paralegals. Based on the fee petitions, the cost to the class for this one Memorandum is over $1 million.

At 75.