**504**

UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee, The Chase Manhattan Bank, N.A., as Trustee, Sharon Steel Corporation, Inc., UV Industries, Inc. Liquidating Trust, and David Finkelstein, Arthur R. Gralla, Paul Kolton, Theodore W. Kheel, Edwin Jacobson and Martin Horowitz, as Trustees of the UV Industries, Inc. Liquidating Trust, Plaintiffs,

v.

EXECUTIVE LIFE INSURANCE CO., Occi & Co., Staniels & Co., Nest & Co., Agway Insurance Company and First Missouri Bank & Trust Co., on Behalf of themselves and as representatives of a class of former Holders of 9¼% Senior Subordinated Notes Due April 15, 1987, Mimi Shapiro, Mortimer A. Shapiro, Pacific & Co., Cede & Co. and North Star Oil Company, on Behalf of themselves and as representatives of a class of Holders of 9¼% Senior Subordinated Notes Due April 15, 1987, Butcher & Co., William W. Humphrey, Trustee, and Louis H. Spiner, Trustee, on Behalf of themselves and as representatives of a class of former Holders of 5⅜% Subordinated Debentures Due November 15, 1995, and Bear Stearns & Co., Cede & Co., Julian S. Goldberg, Mericka & Co., Mutual Shares Corp. and Mutual Qualified Income Fund, Saxon & Co., on Behalf of themselves and as representatives of a class of Holders of 5⅜% Subordinated Debentures Due November 15, 1995, Defendants.

No. 83 Civ. 8723 (DNE).

United States District Court,
S.D. New York.

April 18, 1985.

See also 602 F.Supp. 942.

Carter, Ledyard & Milburn, New York City (Louis L. Stanton, New York City, of counsel), for plaintiff U.S. Trust Co. of New York.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City (John F. Collins, New York City, of counsel), for plaintiff Chase Manhattan Bank, N.A.

Donovan Leisure Newton & Irvine, New York City (David S. Versfelt, New York City, of counsel), for defendant Bear Stearns & Co.

Tenzer, Greenblatt, Fallon & Kaplan, New York City (William Klein, II, P.C., New York City, of counsel), for defendants Mutual Shares Corp. and Mutual Qualified Income Fund.

Crystal & Driscoll, P.C., New York City (Stephen L. Crystal, New York City, of counsel), for defendants Mimi Shapiro and Mortimer A. Shapiro.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

This opinion involves a determination of reasonable attorneys' fees to the representatives of the prevailing classes in an interpleader class action.

This class action was brought by the trustees and issuer of bonds under two indentures for the determination of the bondholders' rights to certain interest payments. The facts giving rise to the interpleader action are set forth in this court's Opinion and Order dated November 20, 1984, *United States Trust Co. of N.Y. v. Executive Life Ins. Co.,* 602 F.Supp. 930 (S.D.N.Y.1984), and the court will not repeat them here. In the November 20th Opinion and Order, this court: (1) granted the motions for summary judgment of the 9¼% Holding Class and the 5⅜% Holding Class; (2) denied the cross motions for summary judgment of the 9¼% Selling Class and the 5⅜% Selling Class; (3) awarded the Holding Classes the interest installment funds held by the stakeholders, United States Trust Company of New York ("U.S. Trust") and The Chase Manhattan Bank, N.A. ("Chase"); (4) awarded the representatives of the two Holding Classes costs, including reasonable attorneys' fees, to be paid out of the class funds; (5) ordered the representatives of the two Holding Classes to submit fee applications; and (6) ordered the class representatives to send notice to the class members of the court's decision.

The co-representatives of the 5⅜% Holding Class are Bear Stearns & Co. ("Bear Stearns"), who were represented in this action by the law firm of Donovan, Leisure, Newton & Irvine ("Donovan Leisure"), and Mutual Shares Corp. & Mutual Qualified Income Fund ("Mutual"), who were represented in this action by the law firm of Tenzer, Greenblatt, Fallon & Kaplan ("Tenzer Greenblatt"). The representatives of the 9¼% Holding Class are Mimi Shapiro and Mortimer Shapiro ("the Shapiros"), who were represented in this action by the law firm of Crystal and Driscoll, P.C. ("Crystal"). The representatives of the two Holding Classes have submitted fee applications. The trustees under the indentures and the class members have been provided

the opportunity to file objections to the fee applications.

DISCUSSION

1. The Application of the Co-representatives of the 5⅜% Holding Class.

The total amount of attorneys' fees sought by the co-representatives of the 5⅜% Holding Class is $33,685.69. As of March 28, 1985, the 5⅜% Holding Class fund contained $983,872.28. Letter of Chase, Trustee for the 5⅜% debentures, dated March 25, 1985. The total attorneys' fees requested constitutes approximately 3% of the class fund. Bear Stearns seeks $22,956.87, consisting of $19,434.00 in professional services and $3,522.87 in disbursements. Mutual seeks $10,728.82, consisting of $9,416.50 in professional services and $748.82 in disbursements. Chase, the trustee for the 5⅜% Holding Class, has not objected to the fee applications of the co-representatives.

On March 19, 1985, Doris S. Mermelstein and Milton E. Mermelstein ("the Mermelsteins"), *pro se*, filed objections to the fee applications of the 5⅜% Holding Class representatives. The Mermelsteins do not object to the amount requested by the Holding Class representatives, but object to the payment of any legal fees prior to satisfaction of the Mermelsteins' claims on the 5⅜% debentures. The Mermelsteins contend that no dispute ever existed that they were entitled to the withheld interest installments at issue in this action, and thus they are entitled to their money, undiminished by attorneys' fees paid to the class representatives.

The 5⅜% Selling Class consists of all persons or entities who held of record 5⅜% debentures on May 5, 1980 and/or November 5, 1980 and/or May 5, 1981, and who subsequently transferred of record 5⅜% debentures so held. The 5⅜% Holding Class consists of all persons or entities who held of record as of June 9, 1983, 5⅜% debentures that were transferred of record by a member of the 5⅜% Selling Class after May 5, 1980. This action involved a dispute between the Selling Class and the Holding Class as to the entitlement to certain withheld interest payments. The Mermelsteins, however, were not members of either the Selling or the Holding Class, because they beneficially owned their debentures before May of 1980, and did not transfer ownership before June 9, 1983. There was thus never any dispute as to their entitlement to the withheld interest payments. The Mermelsteins contend that their payments are not part of the Holding Class fund and thus should not be diminished by any attorneys' fees awarded to the Class representatives.

At the hearing held on March 22, 1985, Chase confirmed that the Mermelsteins were beneficial owners of the 5⅜% debentures throughout the disputed period, and were at all times entitled to the withheld interest. Transcript of Proceedings of March 22, 1985 ("Tr."), at 12–13.[1] Accordingly, the Mermelsteins' share of the interest fund is not to be diminished by any attorneys' fees awarded to the co-representatives of the 5⅜% Holding Class.[2]

1. Chase asserts that the interest installments were not distributed to the Mermelsteins earlier because the bonds were held in street name. Although the Mermelsteins remained beneficial owners of the bonds throughout the disputed period, the record owners of the bond transferred ownership during that period. Chase states that it "made every effort prior to the commencement of the interpleader action to work with brokers and identify people in [the Mermelstein's] category. Many were identified and paid out." Tr. at 11. For example, on May 2, 1984, this court ordered that Massachusetts Mutual Life Insurance Company be paid its withheld interest installments because it was a beneficial owner of the bonds prior to May 5, 1980 and held continuously until the bonds were redeemed on June 10, 1983. Chase, however, was not able to locate all the beneficial owners entitled to the interest installments, such as the Mermelsteins.

2. The same order is applicable to the 9¼% notes. However, no continuous beneficial owners of the 9¼% notes have come forward to assert their status.

At the March 22, 1985 hearing, Chase stated that it "suspect[s] that there are a few others in that category still, in addition to the Mermelsteins...." Tr. at 12. According to Chase, however, it would be very costly and time consum-

■ No other objections to the fee applications of the co-representatives of the 5⅜% Holding Class have been filed. The court finds the attorneys fees requested by the co-representatives of the 5⅜% Holding Class to be reasonable. Donovan Leisure and Tenzer Greenblatt worked together on the motions for summary judgment. This arrangement produced legal memoranda that were among the best, in terms of legal reasoning and research, of all the firms that appeared on the motions. Donovan Leisure has submitted a detailed and clearly written summary of the work performed by its attorneys and the hourly rates charged. Tenzer Greenblatt has submitted photocopies of its time records. The hourly rates charged by each firm are reasonable. The highest rate is $250.00 per hour, charged by William Klein II of Tenzer Greenblatt, a senior partner, who graduated Yale Law School in 1943. The hourly rate of $250.00 is certainly at the higher end of the range of prevailing market rates. However, Mr. Klein only billed 13 out of the 77 hours billed by his firm. Moreover, it appears from the time records submitted that the work performed by Mr. Klein deserves compensation at senior partner rates. The remaining attorneys for Donovan Leisure and Tenzer Greenblatt charged hourly rates ranging from $72.00 per hour for a first year associate, to $160.00 per hour for a first year partner. Since December of 1983, Donovan Leisure's attorneys spent 177.5 hours on this case. Donovan Leisure also has submitted a listing of contemporaneous time records, describing the work done by each attorney. These records reflect the firm's consciousness of the need to economize its efforts and to distribute work in accordance with an attorney's level of expertise. Accordingly, the application of the co-representatives of the 5⅜% Holding Class is granted.

2. The Application of the Representatives of the 9¼% Holding Class.

■ The Crystal firm has requested $200,000.00 in attorneys' fees and $2,238.75 in disbursements. As of March 25, 1985, the 9¼% Holding Class fund contained $2,409,764.26. Thus, Crystal requests approximately 9% of the class fund in attorneys' fees. U.S. Trust, the Trustee for the 9¼% notes, has filed objections to Crystal's fee application. The application filed February 8, 1985 is inadequate in the following respects: (1) it seeks attorneys' fees grossly disproportionate to the fees requested by the representatives of the 5⅜% Holding Class; (2) it fails to provide adequate background information of the Crystal firm; (3) the time records submitted in support of the fee application are illegible, *see in re Continental Illinois Securities Litig.*, 572 F.Supp. 931, 934 (N.D.Ill.1983) ("description of the work done should be sufficient to demonstrate that it benefitted the class or contributed to the recovery of the common fund"); and (4) the application seeks payment of the same hourly rate to an attorney regardless of the complexity of the work performed, *see id.* at 933 ("Senior partner rates are to be paid only for work that warrants the attention of a senior partner.").

The amount requested by Crystal is approximately six times that requested by the co-representatives of the 5⅜% Holding Class. Although the 9¼% fund is substantially larger than the 5⅜% fund, Crystal has requested approximately 9% of the 9¼% fund, while the representatives of the 5⅜% class have only requested approximately 3% of their fund. Moreover, the fact that the 9¼% is substantially larger than the 5⅜%

ing to attempt to identify these beneficial owners. The interest of the class members weighs in favor of speedy distribution of the interest installments, rather than delaying distribution to identify the remaining "Memelstein"-type holders. Although there will be "Mermelstein"-type holders required to pay attorneys' fees, those fees will only constitute a miniscule proportion of the bondholders' awards. By trying to avoid this small loss, the trustees would inevitably inflict a harsher burden on the bondholders by further delaying the distribution of the withheld interest payments. Accordingly, only those bondholders who have come forward as of the date of this opinion and asserted their "Mermelstein" status will be awarded their interest installments free of their proportionate share of attorneys' fees.

fund is not due to the legal efforts of the Crystal firm; the court finds that the services required of the representatives of the 5⅜% Holding Class and the 9¼% were substantially similar.

Crystal contends that it should be awarded a loadstar multiplier of 2½ because it took this case on a contingency, and thus undertook a substantial risk of nonpayment. Neither the Donovan Leisure firm, nor the Tenzer Greenblatt firm has requested any bonus, such as a loadstar multiplier. A multiplier is not warranted in this case, because plaintiffs' attorneys were not required to take the substantial risks in prosecuting this action that have been present in actions where multipliers have been awarded. Because of the interpleader nature of this action, there was never a question as to the availability of the funds. Moreover, this case involved relatively simple issues of contract interpretation. Plaintiffs' counsel did not have to build an entire case, conduct discovery, and prove damages. This was a "paper case," which did not involve the uncertainty of a jury's verdict. *See Beazer v. New York City Transit Auth.*, 558 F.2d 97, 100 (2d Cir.1977) (district court's grant of bonus reversed where legal issues involved were simple and few). While there are, of course, risks involved in the prosecution of any action, the risks involved in this case were minimal and predictable. Accordingly, the application for a bonus is denied.

The loadstar amount requested by the Shapiros is $82,684.00. U.S. Trust also objects to this amount as excessive. The amount is more than twice the combined request of Donovan Leisure and Tenzer Greenblatt. The time spent by the Crystal firm was 440.6 hours, as compared with the combined total of 260.6 hours spent by Donovan Leisure and Tenzer Greenblatt. This gross disparity is unjustifiable, particularly in view of the fact that Crystal came into this action with the advantage of being "fully familiar with all aspects of the facts underlying this action" from its prior representation in related state court litigation. Affidavit of Stephen L. Crystal, February 8, 1985, at ¶ 4. Moreover, although the papers submitted by the Crystal firm in support of the motion for summary judgment were competent, they did not reach the quality of those submitted by the co-representatives of the 5⅜% Holding Class.

Crystal contends that the difference in hours spent is due to the fact that only the Shapiros, the representatives of the 9¼% Holding Class, asserted a counterclaim against U.S. Trust for an accounting. This counterclaim was withdrawn after U.S. Trust provided the Shapiros with the information sought, concerning the investments made and the interest earned on the monies withheld. The court finds that the counterclaim was unnecessary, and that its objectives could have been achieved by use of more cost-efficient measures. Any reluctance of U.S. Trust to provide this information could have been speedily resolved by a short conference with the court. Moreover, U.S. Trust eventually would have been obligated to supply the court with this information on the motion for summary judgment. In any event, because the time records submitted by the Crystal firm are, for the most part, illegible, the court cannot determine the amount of hours spent by Crystal in preparing the counterclaim. Accordingly, Crystal's justification for the disparity in hours billed is rejected.

Crystal has not otherwise properly supported its application. Stephen Lee Crystal, a senior partner, billed for 263.4 hours of work, which is three hours more than the hours billed by Donovan Leisure and Tenzer Greenblatt combined. Mr. Crystal charged $250.00 per hour, a rate for which the court has already stated its reservations. The time records submitted in support of these hours and this rate can only be described as hieroglyphics. *See* Exhibits A & C to Application for Counsel Fees and Expenses of the 9¼% Holding Class.

At the hearing held on March 22, 1985, the court informed Mr. Crystal that its fee application was deficient and provided Mr. Crystal with the opportunity to submit a revised fee application that the court "would find a little more consistent in light

of my comments, . . ." Tr. at 17. On April 10, 1985, Crystal submitted a "supplement" to the previous fee application, in which the firm did not change its request, but persisted that it was entitled to a $200,000.00 fee, based on a loadstar of $82,684.00.[3] Moreover, Crystal has not taken advantage of the opportunity provided by the court to submit legible time records.

■ A requested loadstar amount may be reduced when the number of hours spent appears excessive. *DiFilippo v. Morizio*, 759 F.2d 231, 235–236 (2d Cir. 1985). In view of the comparably few hours spent by the other firms in this action, Crystal's prior familiarity with the facts of this case, and Crystal's failure to provide legible time records to the court after being given a second opportunity to do so, the court finds that the hours spent by Crystal were excessive and that the loadstar amount should be reduced. In reducing the loadstar amount the court is unable to arrive at a mathematically precise figure. The Court is mindful that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). However, the attorney bears the burden of establishing that the fee charged is reasonable. Crystal has not sustained its burden. In reducing the loadstar amount, the court notes that the Crystal firm billed 40% more hours than the attorneys for the 5⅜% Holding·Class. The court does not require the hours billed to be identical, but in view of the substantial similarity of the services required, they must at least be similar. Accordingly, the court finds, based on all the proceedings herein that Crystal's loadstar amount should be reduced by one-third. Crystal is therefore awarded $54,571.44 in attorneys' fees.[4] Crystal request for $2,238.75 in disbursements is granted.

CONCLUSION

The Mermelsteins are to be paid the amounts they are entitled to as set forth in Chase's letter to the court of March 25, 1985, and that this payment is not to be diminished by any attorneys' fees awarded in this action. The trustees are to pay the interest installments, free of attorneys' fees, to all persons, similarly situated to the Mermelsteins, who beneficially owned either 9¼% notes or 5⅜% debentures before and throughout the disputed periods and who have so notified the trustees of such status before the date of the entry of this order.

The application of Bear Stearns & Co. for $22,956.87 in attorneys' fees and disbursements is granted. The application of Mutual Shares Corp. & Mutual Qualified Income Fund for $10,728.82 in attorneys' fees and disbursements is granted. The application of the Crystal firm for $200,000.00 in legal fees is denied. Crystal is hereby awarded $56,810.19 in attorneys' fees and disbursements.

All attorneys' fees and disbursements are to be paid out of the respective class funds. Each class member is to pay a pro rata share of the fee and have that amount deducted by the trustee from his/her award. Final judgment is hereby entered in favor of the 9¼% Holding Class and the 5⅜% Holding Class. The trustees shall disburse the withheld interest installments in accordance with the terms of this opinion and order.

---

**3.** U.S. Trust, the Trustee, still objects to the Shapiros' application, letter dated April 12, 1985.

**4.** This amount brings the proportion of attorneys' fees to class funds for each debenture closer to equivalency.