George Raymond DANIELS, et al., Plaintiffs,

v.

WOODBURY COUNTY, IOWA, et al., Defendants.

No. C 81–4026.

United States District Court, N.D. Iowa, W.D.

Jan. 7, 1986.

Kelley Rice, Legal Services, Sioux City, Iowa, for plaintiffs.

Patrick McCormick, Co. Atty., Roger McEntaffer, Sioux City, Iowa, for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

Pursuant to the Court of Appeals' decision in *Daniels v. Woodbury County,* 742

F.2d 1128 (8th Cir.1984), this case is now before this Court to determine whether the County's current or proposed procedural rules are consistent with minimum due process standards under *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Court has also been directed to examine the question of whether the current definitions of "poor," "disabled," "able-bodied," and "no property" contained in the Woodbury County General Relief Rules afford the applicants minimum due process. The Court also has before it plaintiffs' application for attorney fees. After carefully considering the briefs and oral arguments of the parties, the Court makes the following determinations.

*Issue One: Defendants' Procedural Rules.*

■ Plaintiffs argue that they are entitled to an injunction mandating: (a) written decisions and the reasons for the decisions at both the initial decisional level and on appeal to the Board of Supervisors; (b) written notice of appeal rights; (c) written notice of any requirements for cooperation; and (d) full access to the applicants' file. At the hearing, it became apparent that defendants, for the most part, did not dispute plaintiffs' requests. Subsequent to the hearing, defendants filed a "Compliance with Court Order," in which they clarified their position. First, defendants agree that a general relief applicant should be given a written decision by the general relief worker when such relief is denied in whole or in part. Second, defendants agree that a written decision upon appeal to the Board of Supervisors should be provided to the applicant when relief is denied in whole or in part. Third, defendants agree that general relief applicants should be provided with written notice of their appeal rights and affirmatively state that such practice does exist at the present. Fourth, defendants agree that the general relief applicants should be provided written notice of any requirements for cooperation

and that such practice is now being used. However, defendants argue that general relief applicants should not have full access to their files. Thus, the only question for the Court to decide with respect to defendants' procedural rules is whether an applicant is entitled to full access of his or her general relief file.

Defendants argue that third-party information or documentation contained in an applicant's file should be provided to an applicant only after an independent third-party review of such information finds it to be relevant and material to the denial of applicant's claim. As the Eighth Circuit stated in its decision in this case, the Court is guided by the balancing test set out in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in determining whether defendants' procedural rules are consistent with minimum due process. The factors in the test include: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substituted procedural safeguards; and (3) the government's interest, including the function involved and the fiscal administrative burdens that the additional or substituted procedural safeguards would entail. *Id.,* at 335, 96 S.Ct. at 903. Applying such test to the case at bar, the Court finds that plaintiffs' full access to the file would give plaintiffs the right to cross-examine adverse witnesses whose information may have been responsible for denying an applicant relief. Nevertheless, the Court finds that by allowing an applicant the opportunity to view third-party statements only after an independent third party has determined that such statements are relevant and material does not prevent an applicant from exercising his or her right of cross-examination of a witness who may have been responsible for the denial of benefits.[1] As to the third factor in the

---

1. Plaintiffs also argue that by having an independent third party decide what is relevant, applicants will be unable to fully prepare their case. According to plaintiffs, without knowing

what information exists and with an unreviewable decision by an independent third party, applicants may have their case narrowed and shaped by a person who does not understand

*Mathews* test, the Court finds that the County does have an interest in protecting the confidentiality of irrelevant and immaterial third party communications in that such confidentiality induces relevant and material communication. The Court finds in balancing the above factors, that review of third-party information by an independent third party is appropriate. The parties have agreed that an associate district judge be the independent third party to review the communications.

Plaintiffs have requested that the Court issue an injunction in which it orders the defendants to comply with the four points plaintiffs have argued. However, defendants have stated in their responsive briefs that they are either implementing procedural rules or will soon be implementing rules acceptable to plaintiffs. The Court, therefore, finds that an additional injunction is not necessary except with respect to an applicant's access to his or her file. The Court finds it necessary to order that an associate district court judge review any third-party communication that is within an applicant's file to determine whether such information appears to be relevant or material to the denial of the applicant's claim being refused in whole or in part. Should it be found to be material and relevant by the associate district court judge, an applicant shall be entitled to review such communication.

*Issue Two: Definitions.*

In remanding this case back to this Court, the Eighth Circuit stated that while this Court may not usurp the clearly legislative function of defining eligibility standards in the first instance, it may require such standards to be promulgated and followed in order to limit and direct the deci-

sion maker's discretion. *Daniels v. Woodbury County*, 742 F.2d at 1135.

Subsequent to the hearing on this matter, defendants submitted proposed definitions of "poor person," "no property," "disabled," and "able-bodied." Plaintiffs then submitted a response to defendants' proposals as well as plaintiffs' own proposals. After carefully considering the proposals, the Court finds the following definitions to be proper.

A. Poor Person.

 Defendants proposes definition of "poor person" is the same as it is defined in Iowa Code Chapter 252, which states that:

> [T]he words "poor" and "poor person" as used in this chapter shall be construed to mean those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities, to earn a living by labor.

Plaintiffs have no quarrel with defendants' definition as it is simply lifted from the Iowa Code. However, they challenge the standards of the Employee Manual, which the county worker is required to follow when deciding whether an applicant is poor. The manual has an additional income/expense factor. (Employee Manual, Chapter IV.B.4)2.) Under the Manual, the "basis of living" is determined to be the lower of the "maximum monthly income standards" or the actual cost of necessary needs only incurred by the person in the present living arrangements. Determination of "necessary needs" is within the discretion of the county worker. As the Eighth Circuit stated, where the defendants have already established a category of eligible applicants, such as the category of "poor" persons here, the County may not arbitrarily and capriciously deny the avail-

the theory or practice of general relief law. The Court is not so convinced. The parties have agreed that should the Court order an independent third party to examine the record, it would be an associate district judge. Such a person, who is trained in the law, is not likely to make misjudgments with respect to relevance and materiality. Plaintiffs also argue that the type of review proposed by defendants may also delay access to the information, since few indepen-

dent third parties can be available on short notice. Since the independent third-party review of the information has not been implemented, the Court cannot say that there will be a delay of access to information. As a result, the Court is not convinced by plaintiffs' argument. Further, the Court notes that plaintiffs did not offer any type of alternative to the Court.

ability of that category by lodging unlimited discretion in the hands of the decision-maker. *Daniels v. Woodbury County, Iowa,* 742 F.2d at 1135. Taking that into consideration, the Court finds that a county worker's determination of the needs of an applicant is improper. As a result, the Court finds that the County should be barred from using such a standard. The Court does not find the same to be true as to the maximum monthly income standards. Still, it finds such requirement is dealt with adequately in the definitions of "no property" and "disabled" and, therefore, having such a requirement under the definition of "poor" would be duplicative. As a result, the Court finds defendants' income/expense factor improper.

B. No Property.

■ The term "no property" has been defined as "without property which can aid in his or her support or out of which funds may be realized for his or her maintenance." *Hamilton Co. v. Holland,* 119 N.W. 978, 980 (1909). Furthermore, the Iowa Supreme Court has found that a poor person may have some means and yet still be eligible for relief. *See Hardin County v. Wright County,* 24 N.W. 754 (1888); *Jasper County v. Osborne,* 13 N.W. 104 (1882). Finally, Chapter 252 of the Iowa Code allows a person to have a homestead as well as other property and still be considered a poor person. *See In Re Frentiers' Estate,* 249 Iowa 783, 89 N.W.2d 367 (1958).

Defendants propose to define "no property" to mean the complete absence of any tangible things except clothing. Expanding on the rule, the Employee Manual at Chapter V, B.(4)1 states:

> There is no exemption of any kind, except clothing shall not be considered property. Household furnishings, car, cash, and all other types of property, real or personal, shall cause any individual to not qualify as a poor person regardless of value.

The Court finds defendants' definition is too restrictive in light of the above Iowa decisions.

Plaintiffs propose a standard for "no property" which draws from definitions and rules used to administer the Aid to Families with Dependent Children Program (AFDC), the Supplemental Social Security Income Program (SSI), and Food Stamp Program. The Court finds plaintiffs' definition to be substantially acceptable. Therefore, the term "no property" should be defined as: (1) when determining eligibility of an applicant as a poor person, the value of the applicant's property, other than that property excluded under section (3) of these rules, may not exceed $1,500; (2) where an applicant's household consists of two or more persons, at least one of whom is aged 60 or over or disabled, the value of the applicant's property, other than that property excluded under section (3) of these rules, may not exceed $2,000; (3) in determining eligibility of a poor person, the following shall be exempt from consideration as property: (a) the homestead and adjoining land; (b) basic maintenance items essential to day-to-day living such as clothes, furniture, cookware and other similarly essential items; (c) one automobile up to $1,500 of equity value, unless the automobile is necessary to provide the medical treatment of the applicant or a member of the applicant's household, in which case the equity value may not exceed $4,500; and (d) any burial plots already owned or being purchased by installment payments.

C. Disabled.

Defendant defines "disabled" to mean "the existence of any physical or mental impairment which would enable [sic] the applicant from performing the ordinary duties of any work requirement assigned to said applicant."[2] The Court finds that this definition conflicts with the provisions set out in the Employee Manual in that the

---

**2.** It appears to this Court that defendants use the word "enable" in its proposed definitions when the word "prevent" is more appropriate.

disability must be a "long term condition and it must extend more than two (2) months to qualify as a poor person." Employee Manual Chapter IV, B.4)3. Plaintiffs' proposed disability definition, which again relies on the rules governing the AFDC, SSI and food stamps is more consistent and appropriate in light of his due process rights.

> An acceptable definition of "disabled" is: [Disability] shall mean the existence of an impairment, illness, or defect, either mental or physical, which has a demonstrable effect upon the applicant's ability to perform ordinary work tasks. The incapacity, when not evident to the general relief worker, may be supported by medical statements supplied by a physician or psychologist. A doctor's statement stating the applicant possesses an impairment which has a demonstrable effect on his or her ability to perform ordinary work tasks, shall be conclusive proof of disability. The incapacity may range from partial and/or temporary to total and/or permanent. Mental impairments, alcoholism, or drug addiction may constitute disability depending upon their effect on the applicant's ability to perform ordinary work tasks. There shall be no durational requirement for the incapacity to qualify the applicant as disabled, except that any physical disability need not be recognized until it has been present for fourteen days. Any person not disabled as defined above shall be considered able bodied.

The Court notes that the last sentence was added by the Court to plaintiffs' proposed definition of "disabled."

D. Able-bodied.

Defendants define able-bodied as:

The absence of any physical or mental impairment which, if existing, would enable [sic] the applicant from performing the ordinary duties of any work requirement assigned to said applicant. Work performed shall be valued at equal to the relief received when credited at the rate of the Federal Minimum Wage.[3]

Plaintiffs argue that defendants' definition of able-bodied is subject to the same flaws as their definition of disabled. Further, plaintiffs argue that the standards in the Employee Manual for ascertaining when an applicant is able-bodied are even more egregious. (Employee Manual Chapters V, E.7; IV, B.4)3; V, D)5). Specifically, if an applicant is determined not to be able-bodied, the county worker is instructed to do whatever is possible to find some kind of work for the applicant. According to plaintiffs, in the absence of a well-defined standard for determining disability, defendants will continue to make physically and mentally impaired individuals work for relief. Plaintiffs, however, do not propose a definition of able-bodied. According to plaintiffs, if their definition of disabled is employed, then no poor person can be found to be able-bodied. The Court finds no definition of "able-bodied" needs to be promulgated. As set out in the definition of disabled, any person not disabled as defined above shall be considered able-bodied.[4]

*Issue Three: Attorney Fees.*

 The Court also has before it plaintiffs' motion for attorney fees. Plaintiff has asked for attorney fees in the total amount of $41,440.50 for four attorneys and costs of $7,521.45.[5] The motion has been supported by affidavits itemizing the hours and expenses expended by the attorneys. Defendants resist on several

---

**3.** It appears to this Court that defendants use the word "enable" in their proposed definitions when the word "prevent" is more appropriate.

**4.** Nothing set out in this ruling is intended to conflict with the existence of a well-supervised, adequate "aid to the handicapped" job program, although the same shall not be used to circumvent the rules set out in this order.

**5.** The four attorneys did not work together throughout this case. Rather, they were involved at different times during the case's pendency. Any work done together is considered duplicative and the Court will only consider such work as performed by one attorney. *See In Re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983).

grounds. First, the defendants, individually and as members of Woodbury County, Iowa Board of Supervisors, argue that plaintiffs and intervenor are not entitled to fees against those defendants because plaintiffs did not prevail against those defendants. The Court, in reviewing its order, finds it did not award any damages against those defendants, nor did it find against them, and therefore is in agreement with their position. The Defendant County argues that 28.7 of Garrick Byers' hours and 40.25 of Chris Marie Brown's hours claimed to have been for work not directly involved in the § 1983 action in federal court. Also, Defendant County claims that many hours spent were on unsuccessful claims and therefore are not recoverable.

Civil rights plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing the suit. *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978); *see also Fast v. School District of City of Laude*, 728 F.2d 1030, 1032 (8th Cir.1984). A plaintiff is a prevailing party if he or she succeeds "on any significant issue ... which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). It remains with the district court to determine whether a fee is reasonable. *Id.*

The proper starting point for determining the amount of reasonable attorney fees is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id.* After such calculation, there remain other considerations that may lead a district court to adjust the fee upward or downward, including the important factor of results obtained. *Id.* Where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief, two questions must be answered: (1) did the plaintiff fail to prevail on claims unrelated to the claims on which he succeeded, and (2) did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory

basis for making a fee award? *Id.*, at 434, 103 S.Ct. at 1940. Here the answer to both questions is yes.

Taking the above discussion into consideration, the Court finds plaintiffs entitled to an award of attorney fees of $37,149.60. In making such determination, the Court finds that a rate of $50.00 per hour is appropriate up to and including July 1, 1984 and that $55.00 per hour shall be the approved rate thereafter. Further, from the affidavits submitted by plaintiffs, they claim to have worked 800.8 hours on this case. The Court, however, finds 68.95 hours were spent on unrelated claims and therefore deducts that amount from hours claimed, leaving plaintiffs entitled to compensation for 731.85 hours. Six hundred forty-seven and 40/100 hours were incurred prior to July 1, 1984 at $50.00 per hour, for a subtotal of $32,370.00. Eighty-four and 45/100 hours were incurred after July 1, 1984 for a subtotal of $4,644.75. $32,370.00 plus $4,644.75 equals $37,014.75, the total fee awarded.

Plaintiffs also claim they are entitled to $7,521.45 for expenses. However, the Court finds that these expenses should be treated under the bill of costs, which the Clerk of this Court shall handle.

IT IS THEREFORE ORDERED that the Defendant County shall forthwith adopt the definitions for "poor person," "no property," and "disability," as set out above, and implement their conduct accordingly.

IT IS FURTHER ORDERED that, except as stated below, no additional injunction provisions shall issue in this cause, as this Court is now persuaded that the defendant has represented to the Court that it is for the most part in agreement with the terms of this Order. However, the injunction now in force and effect shall be made permanent. In the event plaintiffs contend that the Defendant County is not living up to the intent and purpose of this Order, said plaintiffs may petition this Court for a precise injunction and will be promptly heard.

IT IS FURTHER ORDERED, that an associate district judge, acting as an independent third party, shall review all third-party information contained in a welfare applicant's file to determine if it is relevant and material to the denial of benefits to the applicant. If deemed relevant and material, an applicant shall be entitled to review the information himself or herself.

IT IS FURTHER ORDERED that plaintiffs be awarded $37,014.75 in attorney fees and costs of this action.