Bill ROTHFARB, on behalf of himself and all others similarly situated, Plaintiff,

v.

William R. HAMBRECHT, et al., Defendants.

Arthur B. GAUSS, on behalf of himself and all others similarly situated, Plaintiff,

v.

MAGNUSON COMPUTER SYSTEMS, INC., et al., Defendants.

Nos. C–82–1065 WHO, C–82–1091 WHO.

United States District Court, N.D. California.

Jan. 13, 1986.

William S. Lerach, Milberg Weiss Bershad Spechthrie & Lerach, San Diego, Cal., David B. Gold, San Francisco, Cal., for plaintiffs.

David L. Sandborg, Bronson, Bronson & McKinnon, San Francisco, Cal., Charles W.

Boand, Wilson & McIlvaine, Chicago, Ill., for defendant Arthur Anderson & Co.

James F. Kirkham, Pillsbury, Madison & Sutro, San Francisco, Cal., for Blyth Eastman Paine Webber, Inc., Hambrecht and Quist.

Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for Magnuson.

Nelson G. Dong, Blase, Valentine & Klein, Palo Alto, Cal., for Nelson Stone and Fairchild Camera.

Philip R. Rotner, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for Deloitte Haskins and Sells.

Denis T. Rice, Jay M. Spears, Peter J. Busch, Howard, Rice, Nemerovski, Candy, Robertson & Falk, San Francisco, Cal., for Hambrecht and Cole.

Lawrence E. Nerheim, David J. Romanski, Steinhart & Falconer, San Francisco, Cal., for Paul H. Magnuson.

Beckford, Spanner & Kelly, Palo Alto, Cal., for Sam R. Goodman.

## OPINION

ORRICK, District Judge.

In this multimillion dollar class action securities violation case, a settlement in the amount of $11,475,000 has been reached. In connection with the final approval and order settling the case, class counsel for the plaintiffs have submitted an application seeking attorneys' fees and costs in the amount of almost $4 million.

### I

The above-entitled actions were brought on behalf of all persons, except the defendants, who purchased Magnuson Computer Systems, Inc. common stock during the period from June 25, 1980, through January 29, 1982. The complaints allege violations of the federal and state securities laws in connection with the offering and sale of the stock during that period. Both plaintiff and defendant classes were certified by this Court in December 1982.

After months of hard-fought litigation involving the review of hundreds of thou-

sands of documents and the taking of numerous depositions, the parties, on the eve of trial, agreed upon a settlement involving the payment of $11,475,000 into a common fund to be disbursed to the plaintiffs and to class counsel as reasonable attorneys' fees.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court held a hearing on September 13, 1985, to determine whether the settlement was fair, reasonable, and adequate. On September 27, 1985, the Court issued an order directing that notice of the settlement be sent to the members of the plaintiff class to advise them that on December 13, 1985, a hearing would be held at which they could be heard as to the fairness of the proposed settlement. Notice of the proposed settlement was mailed to each person and entity in the class, and a notice was published in the national edition of the Wall Street Journal.

At the hearing on December 13, 1985, the Court found the payment into a common fund to be fair, reasonable, and adequate.

Class counsel for plaintiffs have submitted a joint application for an award of attorneys' fees of $3,442,500 plus expenses of $478,699. Over and above the lodestar figure for attorneys' fees, class counsel seek a multiplier of 2.37 to 2.74, depending on whether the historical or current hourly rate is used. The fee award sought by plaintiff class counsel is about thirty percent of the settlement figure of $11,475,-000, but it also represents an average hourly rate of over $400.

■ Class counsel argue that such a multiplier is merited in this case because of the contingent nature of the case, as well as the benefit achieved, the quality of services rendered, and the novelty of the questions involved. These factors will be considered, as they must be, under the *Johnson-Kerr* test in the Ninth Circuit set out below. Nevertheless, class counsel must realize that to a certain extent, the risks of lack of success, nonpayment, and delay are unavoidable features of the legal system and, therefore, contingency does not necessarily mandate an automatic multiplier. Furthermore, the amount of fees paid to defendants' counsel by their clients is totally irrelevant to the amount of reasonable attorneys' fees payable from the common fund, and it was improper for class counsel to make such a comparison.

■ In a case such as this, attorneys' fees may be awarded pursuant to the common fund doctrine. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Under this doctrine, fees and costs are awarded to attorneys for their efforts in creating, preserving, or protecting a fund for the benefit of the class they represent. The fees are paid out of the fund because the attorneys' efforts have benefited others who, absent this form of compensation, would unfairly enjoy the benefit without having shared the cost of acquiring the benefit. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 661 (9th Cir. 1985).

Determining the proper amount of attorneys' fees to be paid from the common fund involves various considerations. Probably the most common approach is designated the lodestar analysis and involves the calculation of a lodestar figure based on the number of hours expended times the prevailing billing rate for comparable legal services. *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830 (9th Cir.1982).

But the lodestar calculation is not final. In *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir.1975), the Ninth Circuit adopted the factors first enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), as guidelines to be considered in the balancing process required to determine reasonable attorneys' fees. These factors are: the time and labor involved; the novelty and difficulty of the questions; the skill required; preclusion of other employment; the result obtained; the experience, reputation, and ability of the counsel; the contingency; and risk. The trial court need not consider all the factors in every case, but it is an abuse of discretion to completely disregard them. *Moore*, 682 F.2d at 838.

In recent cases, the Ninth Circuit has combined the lodestar approach with the *Johnson-Kerr* factors. *Moore*, 682 F.2d at 840; *Thornberry v. Delta*, 676 F.2d 1240, 1242–43 (9th Cir.1982). The blending is accomplished by equating the first factor in the lodestar approach, hours spent, with the time and labor requirements of *Kerr*, and then considering the other *Kerr* factors in setting the hourly rate and determining the propriety of a multiplier to increase or decrease the award. *Moore*, 682 F.2d at 840; *cf. In re Capital Underwriters, Inc. Securities Litigation*, 519 F.Supp. 92 (N.D.Cal.1981).

## II

■ In a class action suit such as this, the district court must act as a fiduciary to serve as a guardian of the rights of absent class members. *In re Equity Funding Corp. of America Securities*, 438 F.Supp. 1303, 1325 (N.D.Cal.1977). A proper fee award can be made only on the basis of sufficient specific evidence regarding the time spent on the litigation, and after an evaluation of the *Johnson-Kerr* factors. *Id.*

As Judge Lucas counseled in *In re Equity*, "the district court must act with jealous regard to the rights of those who are interested in the fund and must not only avoid awarding 'windfall fees' but avoid every appearance of having done so." *Id.* Judge Lucas expressly rejected the percentage approach in awarding attorneys' fees in class actions, as being "arbitrary and inconsistent with both the purpose of awarding attorneys' fees and the concerns about awarding excessive attorneys' fees." *Id.* at 1326. This Court will follow Judge Lucas' sound advice with respect to protecting the rights of those interested in the fund, as well as his rejection of the percentage approach in awarding fees.

Nevertheless, the vice in the application of the common fund doctrine is that to the extent the award of attorney's fees comes out of the judgment fund, the interests of class counsel and the class are adverse. *See Harmsen v. Smith*, CCH ¶ 92,379

(N.D.Cal.1985). Thus, the keystone in our system of justice—seeking the truth in the crucible of controversy—is lacking, leaving the judge the duty of protecting the fund for the class, and at the same time determining what is a reasonable fee to be paid to class counsel for their efforts in settling the litigation and creating the fund. The Court deplores being put in this position.

The hundreds of pages of documentation submitted by counsel for the plaintiff class must be carefully screened to assure that the hours claimed are not duplicative, wasteful, or excessive. The *Johnson-Kerr* factors must be analyzed to arrive at a reasonable hourly rate. A thorough evaluation of the fees and expenses requested should be made in accordance with the thoughtful guidelines set out by Judge Grady in *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill. 1983).

■ Because this Court is keenly aware of its duty to protect the absent plaintiff class members, and determined to avoid the abuses described in *In re Fine Paper Antitrust Litigation*, 98 F.R.D. 48 (E.D.Pa. 1983), and *In re Equity*, or even the appearance of having awarded windfall fees, *In re Equity*, 438 F.Supp. at 1325, a special master will be appointed to review the joint application for attorneys' fees and costs submitted by class counsel in accordance with the views set out in this Opinion. The special master shall then report back to this Court, with appropriate objections and recommendations and, after a hearing on the matter, the Court will set the amount of fees and expenses to be awarded in this action.