**UNITED STATES of America,
Petitioner,**

**and**

**The Dow Chemical Company,
Intervening Petitioner,**

v.

**Dr. James R. ALLEN and John Van
Miller, Respondents,**

**and**

**James P. Wachtendonk, Mary S. Wachtendonk, Ree Anne Wachtendonk and Zachary James Wachtendonk; Robert W. Green, now deceased, and Cheryl A. Green, the widow of the veteran Robert W. Green, now deceased; Charles Chapman and Kuniko Chapman, individually and on behalf of each of the "Vietnam Veterans" who have been affected, individually and on behalf of those so unfortunate as to have been similarly affected by the toxic effects of phenoxy herbicides such as 2, 4, 5-trichlorophenoxy herbicides such as 2, 4, 5-trichlorophenoxy aliphatics manufactured, formulated, advertised, promoted, marketed and sold, individually and collectively, by the corporate Defendants in MDL381 although known to be contaminated with the toxic synthetic organic chemical 2, 3, 7, 8-tetrachlorodibenzo p-dioxin (TCDD or "dioxin"), Intervening Respondents.**

No. 80–C–133.

United States District Court,
W.D. Wisconsin.

June 15, 1982.

Opinion on Award of Attorneys' Fees
Dec. 1, 1983.

Richard E. Cohen, Asst. U.S. Atty., Madison, Wis., for the United States of America.

Richard J. Lewandowski, DeWitt, Sundby, Huggett & Schumacher, S.C., Madison, Wis., for Dow Chemical Co.

Robert K. Aberg, Madison, Wis., for respondents Allen and Van Miller.

David J. Ghilardi, Madison, Wis., for intervening respondents Vietnam Veterans.

CRABB, Chief Judge.

Intervenors, James P. Wachtendonk, et al. (veterans), bring this motion for attorney's fees on behalf of both the veterans and the respondents, Allen and Van Miller. The matter was originally before the court on a petition brought by the United States to enforce administrative subpoenas issued to respondents by an Environmental Protection Agency Administrative Law Judge. The administrative law judge issued the subpoenas at the request of intervening petitioner, Dow Chemical Company, over the objection of the Office of General Counsel of the Environmental Protection Agency. The subpoenas were issued in the con-

text of preparation for an adjudicatory hearing on possible cancellation by the government of certain herbicides manufactured by Dow. The information Dow sought by way of these subpoenas was all the notes, reports, working papers, and raw data which related to a continuing, incomplete, university study conducted by respondent Allen of the effects on primates of exposure to an herbicide that was a subject of the cancellation hearing.

In an order dated May 23, 1980, the court granted the motion of Dow Chemical Company to intervene on the side of the United States, and a similar motion by the veterans to intervene on the side of respondents; both interventions were granted as of right under Rule 24(a), Federal Rules of Civil Procedure. In granting the veterans' motion, I noted that the source of their interest in the subpoena enforcement action stemmed from their participation as class-action plaintiffs in Multi-District Litigation # 381, known as the "Agent Orange" litigation, in which Dow Chemical is a defendant. The veterans urged, and I accepted as true for the purpose of considering the intervention motion, that the Allen study was vital in the determination of whether exposure to the herbicide Dow manufactured was the proximate cause of the injuries plaintiffs complained of in the Agent Orange case, and that the study would be aborted were respondent Allen forced to obey the subpoena and release the data prior to the study's completion.

After considering the arguments of all parties, I refused to enforce the subpoenas, holding that the probative value of the information sought by Dow was minimal, because of the incompleteness of the study, and did not outweigh the substantial burden enforcement would place on respondents, a burden which could not be relieved by a protective order. *United States v. Allen*, 494 F.Supp. 107 (W.D.Wis.1980). In an appeal pursued only by Dow Chemical, the Court of Appeals for the Seventh Circuit affirmed the denial of the enforcement to the subpoenas. *Dow v. Allen*, 672 F.2d 1262 (7th Cir.1982).

## DECISION

■ Under the "American rule," a court cannot grant a motion for attorney's fees unless there is specific statutory authorization for the award or evidence of bad faith or harassment. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

In an argument which implicitly recognizes this rule, the veterans and respondents Allen and Van Miller assert that authority for an attorney's fees award can be traced to section 6(d) of the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136d(d),[1] a section that directs the administrative law judge to order payment of reasonable fees and expenses to witnesses required to testify. However, it is clear that section 6(d) of Federal Insecticide, Fungicide and Rodenticide Act relates to the payment of witness fees, not attorney's fees, a distinction that is reflected also in the pertinent federal regulation, 40 CFR § 164.71.[2]

---

1. 7 U.S.C. § 136d(d) provides:

    Upon a showing of relevance and reasonable scope of evidence sought by any party to a public hearing, the Administrative Law Judge shall issue a subpoena to compel testimony or production of documents from any person. The Administrative Law Judge shall be guided by the principles of the Federal Rules of Civil Procedure in making any order for the protection of the witness or the content of documents produced and *shall order the payment of reasonable fees and expenses as a condition to requiring testimony of the witness.* On contest, the subpena may be enforced by an ap-

propriate United States district court in accordance with the principles stated herein. (Emphasis added.)

2. 40 CFR § 164.71 Fees of witnesses

    Witnesses summoned before an Administrative Law Judge shall be paid the same fees and mileage that are paid witnesses in the courts of the United States, and persons whose depositions are taken, and the persons taking the same, shall be entitled to the same fees as are paid for like services in the courts of the United States. Fees shall be paid by the party at whose instance the witness appears or the deposition is taken.

Alternatively, the veterans and respondents Allen and Van Miller assert that authority to grant attorney's fees is provided by Rule 37(a)(4), Federal Rules of Civil Procedure. At first blush, it does not seem that this provision entitles either respondents or the intervening veterans to attorney's fees, because Rule 37 relates to sanctions applicable to discovery motions ordinarily made in the course of civil litigation. However, a more careful review of the Federal Rules of Civil Procedure discloses a route that leads ultimately to the provisions of Rule 37(a)(4). The journey begins with Rule 81(a)(3), Federal Rules of Civil Procedure, which reads in relevant part:

> These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings.

The next stop along the way is at Rule 45, Federal Rules of Civil Procedure, which governs the issuance of subpoenas. The Notes of the Advisory Committee on Rules following Rule 45 state that Rule 45 is not applicable to the enforcement by district courts of subpoenas issued by administrative officials. I take these comments to mean, however, that Rule 45 does not govern either the standards for issuance of an administrative subpoena that would be considered by a district court in enforcing such subpoenas, or the method of application for a subpoena, or the territorial limits on service, where these matters are regulated by the relevant substantive legislation, *e.g.*, Federal Insecticide, Fungicide and Rodenticide Act. Otherwise, following the dictates of Rule 81(a)(3), Federal Rules of Civil Procedure, the remaining provisions of Rule 45 must control to the extent they are not preempted specifically by the Federal In-

secticide, Fungicide and Rodenticide Act. The Federal Insecticide, Fungicide and Rodenticide Act is silent on the issue of awarding attorney's fees to the prevailing party in an enforcement action.

The subpoenas Dow sought were for the purpose of conducting discovery concerning the bases for the testimony respondent Allen was to give as a witness at the cancellation hearing.[3] Dow did not seek the subpoenas to compel the production of documents at the hearing. An administrative subpoena issued for discovery purposes fits under the category of Rule 45(d)(1), Federal Rules of Civil Procedure; this provision directs a person to produce documents and other tangible items at the time his or her deposition is taken.

■ Dow might be heard to argue that because it had not scheduled Allen's deposition, Rule 45(b) applies. (Rule 45(b) governs the issuance of a subpoena duces tecum which simply commands a person to produce specified documents. An individual who objects to a subpoena under Rule 45(b) is limited to making (1) a motion to quash or modify the subpoena, apparently without an opportunity to seek an award of attorney's fees under Rule 37(a)(4), or (2) a motion that the court condition denial of the motion to quash or for modification upon advancement of the costs of producing the documents by the party seeking the subpoena.) However, Rule 45(b) governs subpoenas directing an individual to produce documents or tangible items *at a trial or a hearing*. Rule 45, subdivision (b), Notes of the Advisory Committee, Federal Rules of Civil Procedure. Production of documents from a non-party for discovery purposes can be compelled "only by a subpoena duces tecum issued under Rule 45(d)(1). 8 Wright & Miller § 2108 (1970)." *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir.1975). *See also Ghandi v. Police Dept. of City of Detroit,*

---

**3.** One of the subpoenas directed respondent Allen to appear at the University of Wisconsin Primate Center on a certain date in order to turn over to Dow all his notes and working papers concerning his study of the effects of the Dow herbicide on primates. Allen was also placed under an on-going obligation to keep Dow apprised of any new information on the subject of his study.

74 F.R.D. 115, 118 n. 3 (E.D.Mich.1977); *McLean v. Prudential Steamship Co.*, 36 F.R.D. 421, 426 (E.D.Va.1965). Thus, even though Dow did not attempt to depose respondent Allen, Rule 45(d)(1) is the appropriate provision to look to in determining whether there is statutory authority under which respondents and intervenors may be entitled to an award of attorney's fees. Rule 45(d)(1) permits a party seeking the subpoena to inspect and copy documents which contain matters within the scope of Rule 26(b), "but in that event the subpoena will be subject to the provisions of Rule 26(c) and subdivision (b) of this rule [Rule 45]." [4] Rule 26(c) concerns the issuance of a protective order and authorizes the court to make any order which justice requires to protect a person from, *inter alia*, unduly burdensome discovery, including ordering that the discovery not be had; it also states that the provisions of Rule 37(a)(4) apply to the award of expenses.[5] Rule 37(a)(4) states that attorney's fees may be awarded to the person who prevails.[6] End of journey.

The present situation is made somewhat complicated because the matter came before the court on the government's petition to enforce the administrative subpoenas, rather than on respondents' motion to quash or for a protective order. However,

until the government acted, there was no need for respondents or the veterans to come to the district court to oppose Dow's attempted discovery. Once the enforcement action was instituted, respondents filed an answer to the petition to enforce, raising, *inter alia*, claims of privilege, burden of production, relevance, materiality, and improper issuance on the ground that the subpoenas were directed at discovery rather than the production of documents at the cancellation hearing. Respondents also requested that the court deny the petition to enforce or modify the subpoena.

As I have noted, the provisions of Rule 45(d)(1) control the subpoenas at issue here. I now find that the relief from enforcement sought by respondents is properly characterized as a motion for a protective order under Rule 26(c). It follows then that Rule 37(a)(4) provides the requisite statutory authority by which respondents may be entitled to an award of attorney's fees. In addition, because their intervention was of right, making them bound by this court's determination on Dow's right to obtain from respondents information that was alleged to be critical to the Agent Orange litigation, the intervening veterans may also be entitled to an award of attorney's fees.[7]

4.  ... The subpoena may command the person to whom it is directed to produce and permit inspection and copying of designated books, papers, documents, or tangible things which constitute or contain matters within the scope of the examination permitted by Rule 26(b), but in that event the subpoena will be subject to the provisions of Rule 26(c) and subdivision (b) of this rule ...
Rule 45(d)(1), Federal Rules of Civil Procedure.

5.  (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had;

. . . . .

The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.
Rule 26(c), Federal Rules of Civil Procedure.

6.  *Award of Expenses of Motion.* If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
Rule 37(a)(4), Federal Rules of Civil Procedure.

7.  Indeed, it may be fair to characterize Dow's effort to obtain the information from respondents in the administrative forum as an attempt to circumvent discovery objections and the attendant risk of an attorney's fees award to the veterans or respondents in the Agent Orange litigation.

Because Rule 37(a)(4) requires that the court conduct a hearing on whether the award request should be granted, and because such a hearing has not yet been held, I cannot determine in this order whether attorney's fees will be assessed. That determination requires inquiry into whether "the making of the motion was substantially justified or that other circumstances make an award of expenses unjust."

In the event it is determined that respondents and the intervening veterans are entitled to an award of attorney's fees, this award will be assessed against Dow and not against the government. This is because Dow's interest in obtaining the information sought by the subpoenas was preeminent over the government's interest. It was Dow which sought the subpoenas in the first instance, over the objection of the Environmental Protection Agency's Office of General Counsel; Dow was quick to intervene in the petition to enforce; and it was Dow, not the government, which pursued to the Court of Appeals for the Seventh Circuit the appeal of this court's decision not to enforce the subpoenas.

This decision is limited to a determination that there exists authority under Rule 37(a)(4), Federal Rules of Civil Procedure, by which the respondents and veterans may be entitled to an award of attorney's fees from intervenor-Dow Chemical Company.

### ORDER

Respondents and the intervenors, both the veterans and Dow, are directed to submit briefs on the issue whether the court should grant the motion of respondents and the veterans for an award of attorney's fees. IT IS ORDERED that respondents and the veterans may have until June 30, 1982, in which to submit a brief in support of their motion for an award of attorney's fees. The briefs are to include an itemization of the fees and costs for which an award is sought.

Intervenor-Dow may have until July 15, 1982, in which to file a brief in opposition to the motion of the veterans and respondents Allen and Van Miller. The brief shall include any specific objections to the itemized fees and costs set out by the veterans and respondents. The briefs will be considered in lieu of a hearing.

### ON AWARD OF ATTORNEYS' FEES

In a memorandum decision entered June 15, 1982, I held that Rule 37(a)(4), Federal Rules of Civil Procedure, provided authority for an award of attorneys' fees to the prevailing parties in an action to enforce an administrative subpoena. At that time, I made no determination whether attorneys' fees should be awarded, because such a "determination required inquiry into whether 'the making of the motion was substantially justified or that other circumstances made an award of expenses unjust.'"

The parties were provided an opportunity to submit briefs on the issue of the propriety of an award of attorneys' fees in the circumstances of this action, and to submit their itemization of the fees for which an award was sought.

*Authority for Award of Attorneys' Fees*

In its submission, intervenor Dow objected to the holding that the Federal Rules of Civil Procedure provided authority for an award of attorneys' fees in a summons enforcement action. Dow cited *United States v. Friedman*, 532 F.2d 928 (3d Cir. 1976) and *United States v. Covington Trust & Banking Co.*, 431 F.Supp. 352 (E.D.Ky.1977). Dow also referred to the statement in the order of this court denying enforcement of the administrative subpoena, to the effect that Rule 45 "is not specifically applicable to the issuance of the subpoenas at issue in this case." *United States v. Allen*, 494 F.Supp. 107, 112 (W.D. Wis.1980).

I have reviewed the cases cited by Dow and re-examined the holding in the June, 1982 order. I continue to believe that the reasoning in that decision is correct. It is true, as Dow notes, that the Notes of the Advisory Committee on Rules

following Rule 45 state that Rule 45 is not applicable to district court enforcement of subpoenas issued by administrative officers and commissions. But the notes go on to state that, "The enforcement of such subpoenas is regulated by appropriate statutes." Reference back to Rule 81(a)(3), which provides that the Federal Rules of Civil Procedure

> apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings,

leads to the conclusion that those portions of the Federal Rules, including Rule 45, apply to subpoena enforcement proceedings, except to the extent that the rule would conflict with a statute. Thus, the Federal Rules do not apply where the Federal Insecticide, Fungicide, and Rodenticide Act or another statute provides for the method of application for subpoena or the standards to consider in enforcement, or the territorial limits of the subpoena, or the production of documents by a non-party of whom no deposition is to be taken.[1]

I read the Advisory Notes as consistent with the proposition expressed in Rule 81(a) that the Federal Rules apply except where they would conflict with statutory provisions. Where there is a gap in the statutes, the Federal Rules will be applied. Rule 45(d)(1) permits a party to obtain or inspect documents in the possession or control of a person who is not a party to the lawsuit, "subject to the provisions of Rule 26(c) and subdivision (b) of [Rule 45]." It is logical, and within the meaning of 81(a), to apply the protective provisions of Rules 26(c) and 45(b) to a non-party from whom discovery is sought, whether in the course of preparation for a trial in district court or "in accordance with a subpoena issued by an officer or agency of the United States"

for discovery purposes. In either setting, discovery can be unduly burdensome, unreasonable, oppressive, annoying, embarrassing to the party charged with production, or violative of trade secrets or other confidential information.

Dow contends that *United States v. Friedman*, 532 F.2d 928, supports its position that the Federal Rules do not authorize an award of attorneys' fees in subpoena enforcement proceedings. I disagree.

In *Friedman* the court of appeals concluded that Rule 45 did not provide specific authority for conditioning compliance with an administrative summons upon advancement of the reasonable costs of production. However, the court looked to Rule 45 for guidance, finding that even if it were not literally applicable, it provided "significant precedent disclosing a broad congressional judgment with respect to fairness in subpoena enforcement proceedings." *Id.* at 937 (footnote omitted). The court affirmed the district court's award of costs in the specific circumstances of the case, holding that

> the very nature of the enforcement scheme implies that there has been a grant from Congress to the courts of the power to fashion a reasonable rule for the protection of persons and organizations summoned by the IRS.

*Id.* at 936. *See also United States v. Covington Trust & Banking Co.*, 431 F.Supp. 352 (E.D.Ky.1977) (citing and following *Friedman* in denying reimbursement to bank of costs of complying with investigative subpoena issued by Internal Revenue Service).

In my opinion, nothing in *Friedman* requires modification of my June, 1982 holding that respondents may be entitled to an award of attorneys' fees under Rule 37(a)(4), Federal Rules of Civil Procedure. In *Friedman*, the subpoenas had been issued by the Internal Revenue Service for

---

**1.** Section 6(d) of the Federal Insecticide, Fungicide, and Rodenticide Act, provides that

Upon a showing of relevance or reasonable scope of evidence sought by any party to a

public hearing, the Hearing Examiner shall issue a subpoena to compel testimony or documents from any person.

7 U.S.C. § 136d(d).

investigative purposes, rather than discovery subpoenas issued in an adjudicatory proceeding; thus, the court was concerned with the possible application of subsection (b) of Rule 45 governing the issuance of subpoenas duces tecum simply commanding the person to produce specified, rather than with subsection (d)(1) which governs subpoenas directing the individual to produce documents at a trial or hearing. Moreover, the court was not being asked to grant attorneys' fees to the prevailing parties. The district court had held that the subpoenas were reasonable and should be enforced, and the moving parties were not seeking reimbursement of attorneys' fees incurred in challenging the legality of the subpoenas, but reimbursement of the administrative costs of compliance with the subpoenas.

Respondents (including the intervening respondents) suggest an alternative ground for awarding attorneys' fees: the "bad faith" exception to the American rule that parties pay their own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Under *Alyeska,* attorneys' fees may be awarded to a prevailing litigant upon a showing that the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 258–59, 95 S.Ct. at 1622. In the succeeding section, I will consider whether the actions of petitioners (including the intervening petitioner) in bringing and maintaining this lawsuit were either substantially unjustified or undertaken in bad faith.

### Merits of Enforcement Proceeding

For the purpose of determining whether petitioners acted unjustifiably or in bad faith, I make the following findings of fact from the record of the cancellation hearing, the record of the enforcement proceeding in this court, and the affidavits and documents filed in connection with the pending motion.

### FACTS

This proceeding arose out of an adjudicatory hearing at the Environmental Protection Agency brought under the Federal Insecticide, Fungicide, and Rodenticide Act to decide whether the registrations of two herbicides manufactured by Dow, 2,4,5–T and silvex, should be retained, modified, or cancelled.

During the "risk" portion of the hearing, the various parties exchanged lists of witnesses and proposed exhibits. The parties also sought further discovery from each other; in particular, Dow sought discovery of certain of the witnesses listed by the EPA, including respondent James Allen, a researcher at the University of Wisconsin-Madison. In a submission dated July 17, 1979, EPA had listed Allen as one of two persons who would testify that "exposure to low levels of TCDD [2,3,7,8-tetrachlorodibenzo-p-dioxin] results in an increased incidence of abortions and other toxic effects in rhesus monkeys." According to the EPA, Allen's testimony was to be based upon articles by Allen and John Van Miller, a University of Wisconsin research colleague, as well as an abstract of a paper by Allen and others relating to the effects upon primates of exposure to 50 ppt (parts per trillion) of TCDD.

In testimony given in August, 1979, before the Federal Insecticide, Fungicide, and Rodenticide Scientific Advisory Panel, Allen disclosed the fact that he had studies in progress of the effects on monkeys of 25 ppt TCDD exposure. The Scientific Advisory Panel recommended that the details of this 25 ppt study be obtained and evaluated by the EPA. The panel said nothing about when this should be done. The panel did not recommend that the details of the study be obtained before the study was complete; on the other hand, the panel did not specify that the EPA delay gathering information about the study until it had been completed.

On October 17, 1979, respondent Allen was convicted in federal court of four counts of theft of public moneys, in violation of 18 U.S.C. § 641. Subsequently, he announced his intention to resign from his

position at the University of Wisconsin-Madison.

On October 23, 1979, Dow filed a written document production request on EPA seeking documents from thirteen of EPA's witnesses. With respect to Allen it made the following request:

1. JAMES ALLEN

a) All documents and records pertaining to any study in which Dr. Allen participated or which was conducted in Dr. Allen's laboratory or under his supervision, and in which 2,4 5-T, silvex, or TCDD was administered to animals or to humans. This request includes documents and records pertaining to complete, unfinished, and ongoing studies, and includes preliminary or rangefinding studies as well as full scale studies.

b) All documents and records reflecting review, comment, or criticism of such studies, including but not limited to review, comment, and criticism pertaining to the design, methodology, data collection or recording, laboratory practices, data interpretation and analysis, and ultimate conclusions of such studies.

c) All documents and records related to the possible presence of polychlorinated biphenyls (PCBs) or other toxic substances in the tissues of test animals used in the studies designated in part 1(a) of this request, and all documents and records related to possible routes of exposure for such PCBs or other toxic substances in such studies, including possible contamination of food or water supplies.

d) All documents and records related to the breeding, care, and maintenance of the test animals used in the studies designated in part 1(a) of this request.

e) All documents and records related to laboratory practices or instructions for laboratory assistants in effect in Dr. Allen's laboratories at the time any of the studies designated in part 1(a) of this request were in progress.

f) The names, addresses, and educational and academic histories of all co-workers or laboratory assistants who have worked on any of the studies designated in part 1(a) of this request.

g) All tissue slides from the carcinogenicity study conducted by Dr. Allen and J.P. Van Miller, reported in Van Miller, *et al.*, "Increased Incidence of Neoplasms in Rats Exposed to Low Levels of 2,3,7,8-Tetrachlorodibenzo-P-Dioxin," Chemosphere 6(9) at 537–44 (1977). The slides may be produced at Dr. Allen's laboratory or at any other reasonable location.

h) All correspondence and memoranda concerning 2,4 5-T, silvex, or TCDD.

i) A complete and current curriculum vitae for Dr. Allen, including educational and academic history, professional employment history, and a complete list of publications.[2]

Allen was unwilling to produce the materials requested and Dow and the EPA were unable to agree on a document request acceptable to Allen.

On November 28, 1979, defendant moved for compulsory discovery against EPA witnesses Allen, Dougherty, Meselson, and Hooper.

In its Final Determination Concerning the Rebuttable Presumptions Against Registration for Certain Uses of Pesticide Products Containing 2,4 5-T and Silvex and Notice of Intent to Hold a Hearing, published in the Federal Register on December 13, 1979, the EPA adopted the Scientific Advisory Panel's recommendation for evaluating Allen's on-going reproductive toxicity study in monkeys fed a diet containing 25 ppt TCDD, stating that "The Agency will review and assess these and any other

---

2. In its brief in opposition to petitions for attorneys' fees, Dow states that it filed this document production request on EPA "pursuant to the Judge's directive," referring to an instruction by administrative law judge Finch. Since the hearing at which this instruction was given took place on February 29, 1980, obviously Dow is in error in asserting that the production request of October 23, 1979 was taken "pursuant to the judge's directive."

available studies in the context of the proposed [7 U.S.C. 136d] (b)(2) hearings."

On February 1, 1980, over the objection of the EPA's office of General Counsel, the administrative law judge presiding over the cancellation hearing granted Dow's request for the issuance of subpoenas for compulsory document production directed to Allen and to Van Miller. In his order, the administrative law judge stated,

> In the spirit of Rule 45 [Federal Rules of Civil Procedure], I will entertain a motion to quash or modify the terms of either or both subpoenas if such motion is filed within the time prescribed in that rule, and such motion contains specific statements or declarations of Dr. Allen relating to:
>
> 1. Specify which studies and documents have been supplied to Dow and the completeness thereof as relates to the Schedule of Documents to be produced attached to the subpoenas.
>
> 2. The ownership of the subject "documents."
>
> 3. The availability of each of the studies in published literature.
>
> 4. What disposition will be made of the "documents" upon the resignation of Dr. Allen? Will they be retained by Dr. Allen or remain in the possession of an investigator or co-principal employed by the University of Wisconsin?
>
> 5. Will Dr. Allen be available as a witness to these studies after his resignation?
>
> 6. Which of the studies in question and the raw data relating thereto have not yet produced significant, reliable and accurate results and why? Give stage of completeness.

The administrative law judge noted "[t]he uncertainties which have arisen due to the fact that Dr. James R. Allen plans to resign his position with the University of Wisconsin."

On February 11, 1980, a motion to quash was filed on behalf of Allen and Van Miller.[3] In a letter attached to the memorandum, Edward Krill of the University of Wisconsin Office of Administrative Legal Services advised that Allen had released to the university any rights he might have to the materials covered by the subpoena and that these materials were in the possession of the University of Wisconsin and would remain available to the parties in the 2,4 5-T and silvex cancellation proceeding. Krill also stated that the 500 ppt data had been produced for Dow; that the 50 ppt data would be produced for Dow as soon as the scientific findings from the study had been accepted for publication, which was expected to occur on or before April 1, 1980; that the 25 and 5 ppt studies were "barely underway and [had] not as yet produced any data beyond the merely anecdotal"; and that perhaps a protective order "modifying the requirement to produce such data to a later stage in the research process" would be reasonable. The letter concluded with the following paragraph:

> The interest of the University in this matter is that in such proceedings, some respect for the disciplines and customs of the scientific community is necessary if the scientific community is to provide its best contribution to such regulatory matters. If the distinction between research results which the scientist will endorse and research results which strangers to the research can develop is lost, then the public and regulatory agencies may loose [sic] sight of the key role of the scientist in interpreting results. Raw · research data does not speak for itself and until an experiment is considered an acceptable effort by its proprietor, others should respect the scientist's reluctance to pre-

---

**3.** It is not clear whether Allen and Van Miller knew about this motion when it was filed. In their answer filed in the enforcement proceedings in district court, Allen and Van Miller contended that it was the EPA that attempted to modify the subpoenas, and that respondents were not notified of any of the hearings before the administrative law judge. The motion to quash appears to have been signed by someone from the EPA on behalf of respondents. There is no evidence that respondents prepared or were personally responsible for the preparation of the motion.

maturely declare the raw data an acceptable basis for analysis.

On February 26, 1980, the administrative law judge granted the motion to quash as to the documents relating to the 500 ppt and the 50 ppt studies, and denied the motion with respect to the documents for the 25 ppt and the 5 ppt studies. He also extended the return date of the subpoenas to March 11, 1980. In the order the administrative law judge made the following statement:

The court is aware of the distinction and usefulness of both complete and incomplete scientific studies and between third party witnesses as opposed to party witnesses. However, this distinction is overcome by the desire of the parties to have before them at the outset any and all relevant evidence which might bear on the final decision. There is no question as to the relevance of the data to be discovered. This is not to say that there has been a determination at this time as to whether or not any such discovered data will be probative or substantive in nature. If any of the data finds it [sic] way into the record of this proceeding, such evidence will be considered as to its weight.

In a footnote the administrative law judge noted that he would entertain a motion for a protective order.

On March 10, 1980, Allen and Van Miller notified the administrative law judge that they declined to honor the subpoenas.

Prior to March 5, 1980, respondents Allen and Van Miller were never approached by Dow to discuss the possibility of drafting a protective order that would meet their concerns for keeping the documents confidential, safeguarding their research against premature disclosure, and preventing interruption of the research activity.

In March, 1980, the EPA requested the United States Department of Justice to review the subpoenas issued to Allen and Van Miller. The department made the independent judgment that the case was worthy of pursuing and prepared an enforcement petition which it filed in this court on March 28, 1980.

On April 10, 1980, Allen and Van Miller filed affidavits in the district court enforcement proceeding in which they made the averments, among others, that are summarized below:

1. All available documents and records pertaining to the 500 ppt study had been provided voluntarily to Dow.

2. The 50 ppt study was still in progress; that a brief excerpt of preliminary observations had been presented at professional meetings in March, 1979; that Dow had requested 50 ppt tissue samples, but had not followed up to obtain the samples.

3. It would be at least three to four years before the 25 ppt and 5 ppt studies would produce sufficient data to permit valid scientific conclusions to be drawn from the data.

4. In the opinion of both Van Miller and Allen, the 25 ppt study would have to run for at least sixty months and the 5 ppt study for longer before any conclusions could be drawn whether the experiments established a "no effect" level for TCDD in rhesus monkeys.

5. The protocols used in all four studies (the 500, 50, 25, and 5 ppt) are alike in all meaningful aspects.

6. As of January, 1980, neither Van Miller nor Allen was in charge of the studies sought by Dow. Neither of the two had possession or control of the underlying data involving the 25 and 5 ppt studies.

7. Van Miller had never been asked to testify at the cancellation hearings.

8. Allen did not intend to testify about the 25 and 5 ppt studies at the cancellation hearings. If he testified at all, he would confine his testimony to the 500 and 50 ppt studies.

9. 2,4 5-T and silvex are herbicides. They are not the same compound as the TCDD used in the University of Wisconsin studies. The studies do not equate readily to 2,4 5-T or silvex.

10.  Common scientific protocol dictates that records relating to test animals must remain at all times in the laboratory housing the animals. The breaking of the chain of originality will jeopardize the research. In the event of an inadvertent or willful publication of the raw data underlying the studies, ongoing and future research would be jeopardized.

11.  Collecting and presenting for inspection the data underlying the 50, 25, and 5 ppt studies would deprive the researchers of the use of the materials for many days, jeopardizing the integrity of their ongoing research.[1]

Both Dow and a group of persons representing veterans of Vietnam who had filed 600 class action suits against Dow and others ("Vietnam Veterans") were allowed to intervene in the district court enforcement proceeding. In an order entered June 11, 1980, I denied enforcement of the subpoenas on the ground that the burden upon the respondents Allen and Van Miller outweighed any probative value the raw data for the 25 and 5 ppt studies might have to the cancellation hearing.

Both the United States and Dow appealed the denial of the petition to enforce; however, the United States withdrew its appeal soon after. On February 25, 1982, the Court of Appeals for the Seventh Circuit affirmed the denial of the petition for enforcement.

## OPINION

■ Taking into consideration the fact that when it pursued the enforcement of these subpoenas in this court Dow knew that neither Van Miller nor Allen had possession of the 25 and 5 ppt data sought in the subpoenas; that the data sought was too incomplete to be of any significant probative value to the cancellation hearings; that it would be at least sixty months before any cumulative no-effect level might be ascertained; that neither Allen nor Van Miller would be testifying at the hearings concerning the 25 and 5 ppt studies; that production of the data might impede or even prevent the researchers from carrying on their studies; and that forcing the production of such data might deter future researchers from agreeing to testify at regulatory hearings or to undertake research relevant to such hearings, I find and conclude that there was no substantial justification for Dow to seek judicial enforcement of the subpoenas at issue.

■ Dow's statements about its efforts to obtain a protective order do not affect this conclusion. First, Dow never approached Van Miller and Allen about such an order until after it had set into motion the enforcement proceeding. Second, Dow's assertions in this respect are of dubious value in light of Dow's refusal to believe the university's representation that neither Allen nor Van Miller had custody of any of the requested documents, the unreasonably expansive scope of Dow's document request, Dow's failure to reduce the scope of the request in any negotiations with the EPA, and the absence of any indication that at any time prior to the commencement of the subpoena enforcement hearing Dow was exerting any effort to reach an accommodation with the univer-

---

4.  The information contained in these affidavits was not known by the administrative law judge when he ordered the issuance of the subpoenas on February 1, 1980. However, on February 26, 1980, when he denied the motion to quash the subpoenas as they related to the 25 and 5 ppt studies, the administrative law judge knew from Krill's letter that Allen had released to the University of Wisconsin all rights he might have to the materials and documents demanded in the subpoena and he was aware of Allen's and Van Miller's (and the university's) position that the 25 and 5 ppt studies were too incomplete to be of any scientific value. He knew the universi-

ty's interest in protecting the integrity of the research done by its members and its concern that forced release of this data might deter other researchers from contributing to research on regulatory matters. He knew also that the university was willing to release the 50 ppt data as soon as the scientific findings from the study had been accepted for publication, expected about April 1, 1980, and that it was willing to discuss a modification of the requirement for production of the 25 and 5 ppt data to require its production at a later stage in the research process.

sity or with respondents over the breadth and scope of the subpoenas, the costs of compliance, or protection of the data from premature disclosure.

■ I do not believe that the administrative law judge's decision to issue the subpoenas or to decline to quash them with respect to the 25 and 5 ppt studies justifies Dow's pursuit of the subpoenas. When he ordered the subpoenas to issue, the administrative law judge did not have before him the information on burdensomeness and lack of probative value provided later by the university and by Allen and Van Miller. As the court of appeals noted, when the administrative law judge declined to quash the subpoenas for the 25 and 5 ppt studies, he did so

> without the benefit of [Allen's and Van Miller's affidavits carefully explaining the earliest points at which valid conclusions could be drawn from the 25 ppt and 5 ppt studies. In our opinion, that information is critical to a proper assessment of the probative value of the documents sought. In any event, the ALJ himself substantially—if not completely—undercut his assertion that useful data could be obtained when he went on to state that while he found the information relevant,
>
>> "This is not to say that there has been a determination at this time as to whether or not any such discovered data will be probative or substantive in nature."

*Dow Chemical Company v. Allen*, 672 F.2d 1262, 1272 (7th Cir.1982).

■ I am persuaded, as was the court of appeals, that the administrative law judge acted erroneously in ordering the issuance of subpoenas upon Allen and Van Miller and in declining to quash the subpoenas. His error cannot be held to justify the extended judicial proceedings instituted and pursued on behalf of Dow or to relieve Dow of the obligation of reimbursing persons not parties to the cancellation hearing for substantial attorneys' fees incurred in defending against the unjustified disclosure of research information.

■ Nor do I believe that the involvement of the United States in the enforcement decision provides justification for Dow's pursuit of the action. As I noted in the June, 1982, order determining that Rule 37(a)(4), Federal Rules of Civil Procedure, provided authority for a possible award of attorneys' fees to the respondents and to the veterans,

> In the event it is determined that respondents and the intervening veterans are entitled to an award of attorneys' fees, this award will be assessed against Dow and not against the government. This is because Dow's interest in obtaining the information sought by the subpoenas was preeminent over the government's interest. It was Dow which sought the subpoenas in the first instance, over the objection of the Environmental Protection Agency's Office of General Counsel; Dow was quick to intervene in the petition to enforce; and it was Dow, not the government, which pursued to the Court of Appeals for the Seventh Circuit the appeal of this court's decision not to enforce the subpoenas.

Respondents and the intervening veterans argue that the only reasonable inference to be drawn from Dow's actions in this proceeding is that Dow wanted to prevent the rhesus monkey studies from being completed or to ensure that, if they were completed, they would have no credibility.

■ I agree that Dow's actions seem to have no valid relationship to what Dow asserts is the true reason for its actions: full discovery for preparation for the cancellation hearings. Once it was established that Allen would not discuss these studies in his testimony, Dow had no discernible need for the data on those studies.

Dow has not offered any convincing explanation for its prosecution of the enforcement petitions. It contends that it sought the subpoenas only after Allen had been listed by the EPA on its list of witnesses testifying "on matters addressed in the subpoenaed *studies*" [emphasis added] (Memorandum of the Dow Chemical Com-

pany in Opposition to Petitions for Attorneys' Fees, p. 4), but the facts are to the contrary. Dow sought compulsory discovery of Allen concerning the 25 and 5 ppt studies although the EPA had never listed Allen as testifying on anything other than the 50 and 500 ppt studies. Dow points to the Scientific Advisory Panel recommendation as justifying its attempts to compel disclosure of the 25 ppt data from Allen, without mentioning that it had sought disclosure of this data before the Scientific Advisory Panel had even made the recommendation to the EPA that it obtain data on the 25 ppt studies. And, of course, the Panel recommendation on the 25 ppt data provides no justification for the attempts to procure the 5 ppt data about which the Scientific Advisory Panel had made no recommendation.

Dow argues that at the time it sought discovery of the Allen studies the EPA staff was contending that those studies demonstrated adverse effects of TCDD at extremely low dose levels and that a no-adverse-effect level had not been demonstrated. I have only Dow's assertion that this was the EPA position; assuming that it was, it does not explain Dow's actions in the face of uncontroverted evidence that the 25 and 5 ppt studies were not sufficiently advanced to demonstrate either some or no-effect of TCDD at the 25 or 5 ppt levels.

■ The weakness of Dow's arguments does not bolster its contention that it acted in good faith and only in the context of the administrative hearing. I am not prepared to find that Dow prosecuted this action solely in an effort to undermine and impede the TCDD monkey studies; I believe the evidence is insufficient to reach such a finding.[5] However, I do find that Dow acted unreasonably and in bad faith in prosecuting this action in the face of what it knew about the status of the studies and their probative value to the matters at issue in the administrative hearing.

## Attorneys' Fees

■ Respondents and the intervening veterans were represented by lawyers from four law firms, Aberg & Jorgensen (Aberg), Schlegel & Trafelet, Ltd. (Schlegel), Sullivan & Associates, Ltd. (Sullivan), and Yannacone & Associates (Yannacone). Counsel from each of these firms are seeking an award of attorneys' fees. Dow disputes the amounts sought, as well as the legal grounds for making such awards.

In analyzing the amounts sought by each group of lawyers, I have reviewed the factors set out in the Code of Professional Responsibility and quoted in *Waters v. Wisconsin Steel Works*, 502 F.2d 1309 (7th Cir.1974):

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Disciplinary Rule 2–106.

---

**5.** I appreciate that Dow has a significant interest in disproving the toxicity of 2,4 5-T and silvex, not only because the sale of products containing these ingredients produces income for the company, but because Dow is a defendant in a large class action lawsuit brought by veterans of the Vietnam war and their survivors, who contend that the veterans were injured by their exposure to Dow-manufactured products used in Vietnam. Although Dow's interest would provide a motivation for discrediting Allen's studies, more than motivation is required to prove that this is what Dow did intend to accomplish in this proceeding.

Because I do not believe the novelty of the issues in this proceeding presented any unusual challenge or great difficulty to counsel, because the work involved was the kind ordinarily performed by lawyers, and because counsel have provided no information bearing on factors (2), (4), (5), (6), (7), and (8), I have considered only factor (3): the fee customarily charged in the locality for similar legal services. Even with respect to that factor, the information available to me is sparse.

I have also considered the points raised in *In re: Fine Paper Antitrust Litigation*, M.D.L. 98 F.R.D. 48 (E.D.Pa.1983), and in the unpublished order entered in *In Re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983). In line with the holdings in those orders, I have reduced claims for time that appeared to represent: duplicative effort, conferences undertaken for the sole purpose of keeping co-counsel abreast of developments, court appearances by more than two counsel on behalf of a client, or review of documents prepared by other firms representing the same client.

### Aberg

Robert Aberg represented respondents in this action. His fees were paid ultimately by the Schlegel firm which represented the Veterans. Aberg seeks an award of $44,-785.07.

Dow concedes that Aberg's hourly rate of $75 for work done by partners is reasonable. From my own knowledge of the Madison legal community and rates customarily charged in this area, I agree.

Dow contends that no fees may be awarded for the appellate work involved in resisting the subpoena. I find no basis in logic or in prior case law for this contention.

I have reviewed the fee itemization submitted by Aberg in the light of Dow's objections, and I find the amount of time expended to have been reasonable in the circumstances of this hotly-contested proceeding. Therefore, I find that Aberg is entitled to an award of fees in the amount of $44,785.07.

### Schlegel

Schlegel is seeking an award of attorneys' fees for representation of the intervening Veterans computed at a rate of $125 per hour for partners' time, $85 per hour for the time of an associate, and $45 per hour for paralegal time, for a total of $28,055.00. Schlegel has submitted an affidavit in which he avers that the hourly rates asked for in the motion are the same hourly rates charged and collected by him and others in his firm of similar experience and ability.

Schlegel's averments do not address the factors relevant to a fee determination as identified by the court of appeals in *Waters v. Wisconsin Steel Company*, 502 F.2d at 1322. I do not know whether $125 per hour is a customary charge in the Chicago area for lawyers of Schlegel's experience. Schlegel has not described his experience as a lawyer in proceedings such as this or suggested why he should be reimbursed at a higher rate than Sullivan, whose request, *infra*, indicates that $100 per hour may be the customary rate for Chicago lawyers.

I am willing to assume that, if Madison lawyers charge $75 per hour, Chicago lawyers of the same ability would charge $100 per hour.[6] I have no reason to think that either Schlegel or Sullivan are of any lesser ability than Aberg. I am prepared to order fee awards to Schlegel at the rate of $100 per hour for the work done by the partners in the firm.

I find some of the Schlegel claims are for work that should have been performed by a non-lawyer, or for work unrelated to this action, or duplicative of work done by Aberg, or consisting only of communica-

---

6. I note that in *In Re Fine Paper Antitrust Litigation*, 98 F.R.D. 48, 83 (E.D.Pa.1983), Judge McGlynn allowed $100 per hour for partner-level work, finding that such rates "were in conformity with the regular hourly rates billed to noncontingent clients by private law firms in major metropolitan areas."

tions with other firms acting as co-counsel for the Veterans. I have reduced the number of hours claimed by Schlegel by the number of hours that appear to have been spent in such activities, leaving 177.8 hours. I find that this amount of time was reasonable under the circumstances. Therefore, I will award attorneys' fees to Schlegel as follows:

| | |
|---|---|
| Schlegel – 171.8 hours  $100/hr | $17,180.00 |
| Trafelet – 2 hours  $100/hr | 200.00 |
| Nicholson (associate) [7] | 0.00 |
| Baron (paralegal) 18 hours  $45/hour | 810.00 |
| TOTAL: | $18,190.00 |

### Sullivan

Sullivan seeks an award of $24,239.05 in attorneys' fees for services rendered to the Veterans, at a rate of $100 per hour for partners' time, $85 per hour for associates' time and $40 and $50 for time spent by law clerks. Like Schlegel, Sullivan has not submitted any proof that $100 is a reasonable rate for lawyers in the Chicago area with experience similar to Sullivan's. For the reasons expressed above in connection with Schlegel's claim, I am willing to assume that it is.

Sullivan has not explained why it might have been necessary to use three law firms to represent the Veterans in this proceeding. Even if it were necessary at certain stages, it was not necessary to have representatives of three firms appear in court. I have deducted from Sullivan's claim the time spent in Madison with members of the other firms representing the Veterans and time spent in reviewing the submission of co-counsel on the ground that the time spent in this manner was duplicative and unnecessary.[8] I have also deducted time

spent on matters unrelated to this proceeding.

Deduction of this time leaves a net claim of $14,337.50, computed in this manner:

| | |
|---|---|
| Partner—87.25 hours | |
| $100/hr. | $8725.00 |
| Associate—72.50 hours | |
| $65/hr. | 4712.50 |
| Law Clerk—20 hours  $45/hr. | 900.00 |
| TOTAL: | $14,337.50 |

### Yannacone

Yannacone seeks an award of attorneys' fees and costs in the amount of $118,325.00, at a rate of $300 per hour for work done by Victor Yannacone in the years 1980 and 1981 and $325 per hour for work done by Victor Yannacone in 1982. In support of the request, Victor Yannacone avers that the rates sought are "based upon established billing practices in the New York Metropolitan area of successful attorneys of the accumulated experience of your deponent and the special knowledge and competence of your deponent and his associates."

I do not consider this conclusory averment sufficient proof of the prevailing rates in the New York area to permit the award of what appears to be an unusually high rate for legal work. Further, Yannacone offers no explanation for his apparent belief that three law firms were necessary to represent the Veterans in this proceeding or, if such a dual (or triple) appearance was necessary, why it was necessary for more than one representative of Yannacone & Associates to appear. Finally, Yannacone has not shown why it might have been necessary for as many as fourteen lawyers from the firm to participate in a conference

---

**7.** Nicholson's only time on this case was spent in traveling to Madison with Veterans' counsel, S.J. Schlegel, Victor Yannacone, and Albert Fiorella. I see no reason why Nicholson's presence was necessary when there were three other Veterans' lawyers on the trip and another waiting in Madison.

**8.** In deducting claims for duplicative work, I have proceeded by assuming that the first claim for such work (in the order in which I looked at the fee requests) was the valid one and any subsequent ones were duplicative. Obviously, it

may be that my assessment is erroneous. It may be that the second of two requests represents the true laboring oar in a particular brief or court appearance. However, from the requests submitted, I have no way of knowing which of the lawyers claiming fees for the same work was performing the essential work and which was only reviewing it or sitting silently at counsel table. If there is a misallocation, counsel for the Veterans can work it out among themselves.

to discuss Dow's decision to appeal the order denying enforcement of the subpoenas. As Judge Grady pointed out in the order entered June 21, 1983, in *In Re Continental Illinois Securities Litigation,* "Generally, attorneys should work independently, without the incessant 'conferring' that so often forms a major part of the fee petition in all but the tiniest cases." At 933.

In the absence of any explanation for the multiple appearances, or numerous in-house conferences, I have eliminated all of them from the Yannacone fee request. Also, I have eliminated time spent on matters other than the subpoena enforcement proceeding in this court and in the court of appeals.

| | |
|---|---|
| Victor Yannacone—51 hours $100/hr. | $5100.00 |
| Keith Kavanagh—20.75 hours $100/hr. | 2075.00 |
| Paralegal—3.50 hours $45/hr. | 157.50 |
| TOTAL: | $7332.50 |

### ORDER

IT IS ORDERED that the motions of respondents and intervening respondents for an award of attorneys' fees against intervening petitioner, Dow Chemical Company is GRANTED. Further, IT IS ORDERED that intervening petitioner is to pay attorneys' fees in the total amount of $84,645.07 allocated as follows:

| | |
|---|---|
| Aberg & Jorgensen | $44,785.07 [9] |
| Schlegel & Trafelet, Ltd. | 18,190.00 |
| Sullivan & Associates, Ltd. | 14,337.50 |
| Yannacone & Associates | 7,332.50 |

FURTHER, IT IS ORDERED that all such fees are to be paid in full no later than January 15, 1984.

---

[9]. It will be up to Aberg to pay to Schlegel any portion of this award for which it has been previously reimbursed by Schlegel.